BURCH & CRACCHIOLO, P.A.
702 East Osborn, Suite 200
P.O. Box 16882
Phoenix, Arizona 85011-6882
(602) 274-7611

Bryan Murphy (006414)
BMurphy@bcattorneys.com
Melissa G. Iyer (024844)
MIyer@bcattorneys.com

Attorneys for Defendant John Huppenthal, Superintendent
of Public Instruction of the State of Arizona

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CURTIS ACOSTA, et. al., | Case No. CIV 10-000623-AWT |
| Plaintiffs, | |
| v. | **REPLY IN SUPPORT OF DEFENDANT SUPERINTENDENT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |
| JOHN HUPPENTHAL, Superintendent of Public Instruction and Executive Director of the Arizona State Board of Education, et. al., | |
| Defendants. | |

Plaintiffs' response strains to assert an injury where none exists and strains to assert a First Amendment violation where none has occurred. The allegation that students have been deprived of their right to receive information in courses they have <u>never taken</u> and <u>are not eligible to enroll in</u> is not a sufficient injury for purposes of standing. Similarly, the plaintiff teachers cannot rely on a subjective chill on their instructional speech or on speculative, adverse employment consequences that <u>have not resulted</u> and are contingent upon the decisions of their non-party employer to establish their standing. Lastly, plaintiffs have no First Amendment right to dictate the curriculum in Mexican American studies courses and have not otherwise asserted a constitutional violation sufficient to sustain their First Amendment claims. Accordingly, dismissal of the Third Amended Complaint is proper.

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Plaintiffs Have Not Articulated an Injury In Fact Sufficient to Establish Their Standing.

### A. Plaintiffs' Equal Protection and Due Process Challenges Also Require Proof of an Injury In Fact Sufficient to Satisfy Article III.

Plaintiffs initially assert that the motion to dismiss "misconstrues" their Third Amended Complaint "by attacking only the plaintiffs' standing to assert violations of their First Amendment rights." Plaintiffs then point out that the Third Amended Complaint also asserts claims for a violation of the Equal Protection and Substantive Due Process clauses of the Fourteenth Amendment.[1] (Response at 6-7.) To the contrary, defendant's motion attacks plaintiffs' standing to assert any of the claims alleged in the Third Amended Complaint. Standing is a prerequisite to the Court's jurisdiction and must be satisfied for Equal Protection and Due Process claims as well as First Amendment claims. *See Maya v. Centex Corp.*, ___ F.3d ___, 2011 WL 4381864, at *4 (9th Cir. 2011) ("[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. Rather, "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits."); *Carroll v. Nakatani*, 342 F.3d 934, 940-41 (9th Cir. 2003) (citations omitted) ("[E]ven if a government actor discriminates on the basis of race,

---

[1] The Due Process clause of the 14th Amendment provides that "[n]o State shall deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. Thus, due process is not invoked unless a government actor's conduct "deprives" the plaintiff of a protected liberty or property interest. Though asserting a "substantive" due process claim under Count Six of the Third Amended Complaint (at ¶¶ 129-131), the only "substantive" rights plaintiffs allege that they have been deprived of are the alleged infringements of their First Amendment rights. So while plaintiffs may have asserted this as a separate count, their "substantive" due process claim is inextricably linked to their claim that HB 2281 infringes upon their First Amendment rights (either on its face or as applied to the MAS program).

the resulting injury 'accords a basis for standing only to those persons who are personally denied equal treatment.'").

Because plaintiffs have not identified an injury-in-fact that is traceable to the Superintendent's conduct, they do not have standing to bring any of the claims asserted in the Third Amended Complaint.

**B. Plaintiffs Still Allege Nothing More Than a "Subjective Chill" of Their Speech and Speculation Regarding Adverse Employment Consequences Not Yet Materialized, Which Is Not Sufficient to Establish an "Injury In Fact."**

Rather than meeting their burden of establishing a sufficient "injury in fact," plaintiffs' response demonstrates irrefutably that their alleged injuries are speculative and contingent upon actions not yet taken by the Tucson Unified School District, which is <u>not</u> a party to this lawsuit.  The response illustrates that plaintiff's alleged injuries are largely premised upon a subjective "coercion felt by the plaintiffs," instead of any real or immediate threat of actual harm.  (Response at 8.)  In support of their "feeling" of "coercion," plaintiffs inaccurately and inappropriately reference evidence offered during the course of the separate administrative hearing involving enforcement of HB 2281 against the Tucson Unified School District.[2]   Plaintiffs have not alleged that they have been disciplined, terminated, or even instructed to curtail their "instructional speech" as a result of those enforcement proceedings against the district.  And none of the plaintiffs are or could be a party to those proceedings because HB 2281 does not apply to restrict the conduct of individual teachers or

---

[2] The Superintendent hereby moves to strike all references in plaintiffs' response to evidence presented during the course of the evidentiary hearing.  The partial references to evidence as having been "admitted" at the hearing (but not a part of this case or this Court's record) are inaccurate and incomplete.

3

students in any way. As the Ninth Circuit has "repeatedly admonished," the "mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). "[A]s a matter of common sense, one to whose conduct a statute clearly does not apply surely has no standing." *Richmond Medical Center for Women v. Gilmore*, 55 F.Supp.2d 441, 464 (E.D.Va. 1999).

        1.      <u>The plaintiff students could not be deprived of their "right to receive information" when they have never been enrolled in and are not eligible to enroll in any MAS course</u>.

Plaintiffs' response acknowledges that "[t]he two student plaintiffs, Korina Lopez and Maya Arce . . . will not be eligible to enroll in MAS classes until the fall of 2012 and 2013, respectively." (Response at p. 8, lns. 11-13.) The plaintiffs nevertheless urge that these students and their parents have standing to assert "the denial of equal treatment and freedom of speech resulting from HB 2281 and its enforcement" based exclusively upon their "intent to take MAS classes" and their assumption that such classes will be not be available at the time they become eligible to enroll. (*Id.* at p. 10, lns. 9-10.)

To establish standing for prospective relief, plaintiffs must demonstrate "a 'genuine threat' of adverse treatment due to the policy's imminent enforcement." *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 657 (9th Cir. 2002). Although "imminence" is "a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is certainly impending." *Id.* at 658. Thus, where a

4

student's "professed intention" to subject herself to a race-based school policy "is contingent upon an unpredictable set of societal factors that may or may not arise," she has not established an injury in fact. *Id.* at 658 (denying parents standing where students had not yet been subject to any race-based discrimination and could not demonstrate that they would be). Standing is determined based upon "the facts as they existed at the time that the complaint was filed." *Id.* at 655.

In support of the two students' standing, plaintiffs' response misapplies the Supreme Court's rulings in *Gratz* and *Parents Involved in Community Schools* (see Response at 8, n. 38, 10, n. 48) and the Ninth Circuit's ruling in *Johnson* (Response at 9, lns 15-23). The Supreme Court's decisions in *Parents Involved* and *Gratz* both involved equal protection challenges to race-based admission and assignment policies. The fact that race was a key factor considered in the admissions policies at issue in *Gratz* was not disputed. It was also "undisputed" that "underrepresented" racial minorities were favored by the admissions policies. *Gratz v. Bollinger*, 539 U.S. 244, 254 (2003). Similarly, in *Parents Involved*, the fact that race was utilized as a factor in high school assignment within the defendant school district was undisputed. Thus, even parents with younger elementary and middle school children faced an "imminent" injury because it was undisputed that the allegedly unconstitutional, race-based assignment policy would be applied to them when it came time for them to apply. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist.*, 551 U.S. 701, 718 (2007).

Unlike the facts presented in *Parents Involved* and *Gratz*, the plaintiff students here have not asserted that they have been or will imminently be deprived of equal treatment by any race-based school policy on school admission or assignment.

5

Rather, they presume that MAS classes will be eliminated by the district upon enforcement of HB 2281. This presumption, however, is entirely speculative. By its terms, HB 2281 does not dictate elimination of any classes even if found to be in violation of the statute. The only remedy is a reduction in state aid to a district deemed to be in violation and, even then, the monetary sanction is only temporary. HB 2281 does not alter the discretion of school districts in selecting their course offerings and curriculum. Thus, the non-party school district is, at all times, empowered to determine the fate of the MAS program as it can with any of its other curricular programs.

Indeed, HB 2281 has been "enforced" through two findings against the district in the implementation of its MAS program by Superintendent Huppenthal and his predecessor. Nevertheless, MAS classes are still being conducted without modification. Rather than choosing to eliminate the program, the school district has vigorously defended against any finding against it as a consequence of HB 2281. Accordingly, the analysis of standing set forth in *Parents Involved* and *Gratz* is inapposite.

Plaintiffs' reliance on *Johnson v. Stuart*, 702 F.2d 193 (9th Cir. 1983), is similarly misplaced. *Johnson* recognized the students' standing to challenge this statute because the statute broadly prohibited the use of any textbook that spoke "slightingly of the founders of the republic." Under the plain language of the statute, any student attending school in Oregon would be deprived of all such textbooks and it was "undisputed" in the district court that such textbooks did exist. *Id.* at 195. The Ninth Circuit ruled that, "as persons who would have received the information except

for its alleged suppression by the state," the Oregon students had standing to challenge the statute.

Unlike the student-plaintiffs in *Johnson*, the students in this case are not "persons who would have received information except for its alleged suppression by the state" because they are not enrolled and are not eligible to enroll in any MAS class. *See also Barron v. South Dakota Bd. of Regents*, 655 F.3d 787, 794-95 (8th Cir. 2011) (Parents did not have standing to file due process claim challenging decision to move auditory-oral program to another school district where "none of them had children enrolled in the auditory-oral program at the school's campus."); *Nat'l Fed. of the Blind v. Ariz. Bd. of Regents*, No. CV-09-1359, 2009 WL 3352332, at *2-3 (D. Ariz. Oct. 16, 2009) (Blind ASU student did not have standing to challenge use of Kindle DX in pilot program where he was not eligible to enroll in classes using the Kindle DX and had "not identified any clear policy by ASU that will in any way impact him."). Furthermore, these students cannot demonstrate that any injury is "certainly impending," because they cannot show that enforcement of HB 2281 will necessarily result in any change or elimination of the MAS program by the time they become eligible to enroll in MAS classes.

    2. <u>The plaintiff teachers' "subjective chill" and speculation regarding adverse employment consequences is not sufficient to establish standing</u>.

Even if the plaintiff students could assert an injury in fact sufficient to establish standing, the plaintiff-teachers and the director of the MAS program should be dismissed as a matter of law. The plaintiff teachers have suffered no adverse employment consequence as a result of HB 2281 and have asserted nothing more than

7

a "subjective chill" of their instructional speech.   Accordingly, they have not demonstrated an "injury in fact" sufficient to invoke this court's jurisdiction.

An individual claiming a "chill" on First Amendment speech rights must make an objective claim of chill by pointing to a credible threat of penalty for exercising those rights.  *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009). "[N]either self-censorship nor subjective chill is the functional equivalent of a well-founded fear of enforcement when the statute on its face does not regulate expressive activity." *Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d 1133, 1143 (9th Cir. 2009).  *See also Lopez v. Candaele*, 630 F.3d 775, 792 (C.A.9 (Cal.),2010) ("[S]elf-censorship alone is insufficient to show injury.").  Thus, "[t]he analysis of whether the [plaintiffs'] claim of 'chill' is objectively reasonable must begin with a review of what is actually prohibited-i.e., the plain language of the [statute]."  *Doe v. Sch. Bd. for Santa Rosa County*, 264 F.R.D. 670, 680 (N.D. Fla. 2010).

By its terms, HB 2281 does not prohibit a teacher's instructional speech, but merely prohibits a district from offering classes within its program of instruction that violate the specific provisions of § 15-112(A).  The statute also does not provide for any penalty against individual teachers for engaging in instructional speech.  Thus, the plaintiff teachers in this case cannot point to any part of the statute they seek to challenge as potentially imposing a "credible threat of penalty" upon them for exercising their First Amendment rights, even assuming their "instructional speech" receives some First Amendment protection.

That these plaintiff teachers are asserting no more than a "subjective chill" is readily apparent by reference to their            Response.  For example, plaintiffs claim

that the introduction of written curriculum materials and student work in the separate administrative proceeding against TUSD has chilled MAS teachers' use of such materials in the classroom. (Response at 14, ln. 19-p. 15, lns.1-14.)  Plaintiff Sally Rusk's affidavit references one of her student's artwork that she posted outside of a classroom as having been "introduced into evidence at the administrative hearing against TUSD."[3]  (Response, Ex. C at ¶ 6-8.)  Ms. Rusk goes on to state that she "stopped posting student work in the hallway because [she] fear[ed] the scrutiny that [her] students and [she] are under."[4]  (*Id.* at ¶ 9.)  Ms. Rusk does not point to any actual disciplinary action that has or could be taken against her pursuant to HB 2281 or the enforcement proceedings against TUSD.  She does not even suggest that her superiors instructed or requested that she take down the student work referenced in her affidavit.  Rather, she "self-censored" by removing the student's artwork based upon her subjective "fear" of "scrutiny."  This is precisely the type of self-censorship which, without more, cannot support standing to bring a First Amendment claim.

The second purported injury alleged by the plaintiffs is that they will be "terminated" as a result of the enactment and enforcement of HB 2281.  None allege

---

[3] Although a photograph of student artwork was introduced as evidence, it was not known until the filing of plaintiff's response that the picture originated with Ms. Rusk or that it was posted outside her classroom in the Spring of 2011.  Accordingly, apart from being demonstrative of TUSD's "program of instruction," Ms. Rusk was not individually implicated in the administrative hearing in connection with this anonymous student's work.

[4] Incidentally, the posting of items on bulletin boards by teachers in public schools is not protected speech under the First Amendment.  "A public school's curriculum, no less than its bulletin boards, is 'an example of the government opening up its own mouth,' . . . Because the government's own speech is not subject to the First Amendment, plaintiffs have no First Amendment right to compel that speech." *Nampa Classical Academy v. Goesling*, 2011 WL 3562954, at *1 (9th Cir. 2011).

1   that they have been terminated, suspended, or even subject to any discipline as a
2   result of the enforcement of HB 2281 against the MAS program in which they teach.
3   Indeed, the fact that the school district is vigorously defending itself in the state
4   administrative proceedings further undercuts plaintiffs' speculation that "they would
5   be terminated" (at the discretion of their school district employer who is not a party to
6   this lawsuit) as a result of the enforcement of HB 2281.
7       HB 2281 was passed in May of 2010 and became effective in January of 2011.
8   Despite the fact that the Mexican American Studies ("MAS") program has been found
9   in violation of the law twice, the school district has not taken any adverse
10  employment action against the plaintiffs and has not chosen to cut the program.
11  Rather, the district has hired a team of private attorneys and spent a significant
12  amount of its budget to appeal the findings in a fully litigated evidentiary hearing
13  before an independent administrative law judge.  Even assuming the district's appeal
14  is unsuccessful (it may not be), the district is still ultimately in control of how the
15  MAS program is impacted by the enforcement of HB 2281 against it.  The district
16  could keep the program unchanged notwithstanding the reduction in state aid; it could
17  modify the program to achieve compliance with state law; or it could eliminate the
18  program.  Plaintiffs may or may not suffer an adverse employment consequence
19  depending upon how the district chooses to exercise its discretion regarding the MAS
20  program.  Accordingly, plaintiffs' fear that they will be terminated is speculative and
21  contingent upon decisions made by their non-party employer, which have not and
22  may never be made.
23      The only support for their claim that they will "likely" be terminated as a result
24  of HB 2281 is a reference to a drop in       enrollment in MAS classes during the Fall

2011 semester.  (Response, Ex. A at ¶¶ 7-8.)  Plaintiffs speculate that students "are understandably apprehensive about taking [MAS] classes."  Plaintiffs do not offer any support for their speculation that the drop in enrollment is causally connected to the enforcement of HB 2281.  More importantly, plaintiffs do not allege that any one of them has been reassigned, terminated, demoted, or suffered any adverse employment consequence as a result of the drop in enrollment.  Thus, they have still failed to transform their concern regarding potential termination of their employment from contingent and speculative to concrete and particularized.  Accordingly, no injury has been established.

Despite their efforts to analogize it to the facts alleged here, the Ninth Circuit's decision in *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) does not support plaintiffs' claim of an injury in their "potential termination."  (*See* Response at 16, lns. 6-19.)  In *Stormans*, the plaintiff-pharmacists alleged an "injury in fact" by specifically alleging direct adverse consequences to their employment as a result of the challenged regulations –

> **Mesler alleges that**, without the court's injunction, she expects to be fired because her religious convictions prohibit her from dispensing Plan B and **her employer has told her that it will not be able to accommodate her**. **Thelen alleges she was forced to leave her former job** (after her pharmacy was unable to hire a second pharmacist) to work at a pharmacy that accommodates her religious belief by ensuring that there is always another pharmacist on duty. **Thelen has taken a job farther away from her house for less pay** because her religious beliefs did not allow her to dispense Plan B.

*Id.* at 1121 (emphasis added).  Unlike those plaintiffs named in *Stormans* lawsuit, none of the plaintiffs have alleged that TUSD has actually threatened to terminate, suspend, or discipline any of them as a consequence of HB 2281.  And none of the plaintiffs have been terminated or have had to voluntarily leave their positions as a

11

result of HB 2281 akin to the plaintiff-pharmacists in *Stormans*. Thus, the facts at issue in *Stormans* are highly distinguishable from the "potential termination" alleged by the plaintiffs here.

II. **Abstention is Appropriate In Light of the Pending State Administrative Proceedings Both Because It May Provide a Narrowing Construction of HB 2281, Which Will Impact This Court's Analysis of Plaintiffs' Claims and Because It May Ultimately Moot Plaintiffs' Claims Entirely.**

Plaintiffs challenge defendant's request for abstention by asserting that the "state administrative proceeding is ill-equipped to adjudicate in a competent manner" issues relating to the interpretation of HB 2281. In so doing, plaintiffs highlight the sensitive federalism concerns raised by the existence of parallel proceedings on overlapping issues in federal and state courts.

"Whether it is labeled 'comity,' 'federalism,' or some other term,' the policy objective behind . . . abstention is to 'avoid unnecessary conflict between state and federal governments.'" *United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001). "A First Amendment challenge does not alter the propriety of abstention" and abstention is appropriate if three requirements are met: (1) there are "ongoing state judicial proceedings;" (2) "important state interest[s]" are implicated in the proceedings, and (3) there is an "adequate opportunity to raise federal questions in the proceedings." *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987).[5]   Each of these elements is satisfied here.

First, as plaintiffs repeatedly reference in their response, enforcement proceedings against the Tucson Unified School District are currently pending pursuant to § 15-112(B) and Arizona's Uniform Administrative Hearing Procedures

---

[5] Application of either Burford or Younger abstention is appropriate.

Act (Ariz. Rev. Stat. § 41-1092.01, et. seq).  The Supreme Court has held that administrative proceedings are "ongoing judicial proceedings" subject to abstention under *Younger*.  *Ohio Civil Rights Commission v. Dayton. Christian Schs., Inc.*, 477 U.S. 619, 629 (1986).  In so doing, the Supreme Court rejected the argument that a state administrative tribunal "could not construe its own statutory mandate in the light of federal constitutional principles."  *Id.*  The Court went on to emphasize that even if an administrative judge could not consider constitutional challenges to a state law, "it is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding."  *Id.*

Plaintiffs make the same argument rejected in *Dayton* by claiming that the administrative law judge "is ill equipped to adjudicate[] in a competent manner" any parallel challenges to the vagueness of HB 2281 asserted by the school district.   The argument should be rejected here as it was in *Dayton*.  The currently pending administrative proceedings are subject to appeal and review by Arizona state courts, which are empowered to consider any federal or state constitutional challenges to the statute.  "Failure to exhaust state appellate remedies satisfies the requirement that there be 'ongoing judicial proceedings' in order to justify federal abstention."  *World Famous Drinking Emporium*, 820 F.2d at 1082.

Education is "perhaps the most important function of state and local governments."  *Honig v. Doe*, 484 U.S. 305, 309 (1988) (quoting  *Brown v. Board of Educ.*, 347 U.S. 483, 493 (1954)).  HB 2281 is, undoubtedly, an exercise of state authority to regulate public education in the state of Arizona.  It is axiomatic that the interpretation of HB 2281 is, therefore, an "important state interest" implicated by

13

these parallel proceedings.  Accordingly, the second *Younger* requirement is also satisfied.

As recognized in *Dayton*, the final factor required by *Younger* (i.e., opportunity to raise federal constitutional issues in the state proceeding) is satisfied where "constitutional claims may be raised in state-court judicial review of the administrative proceeding."  *Dayton*, *supra*, 477 U.S. at 629.  The enforcement proceedings against the Tucson Unified School District are being prosecuted pursuant to A.R.S. § 41-1092.01, et seq.  Once a final decision is rendered, it is appealable to Arizona state courts (A.R.S. § 41-1092.08(H)) and although factual findings are entitled to great deference, "[w]hen the issue involves an interpretation of law by the administrative agency, this Court is free to reach its own legal conclusion." *Romo v. Kirschner*, 181 Ariz. 239, 240, 889 P.2d 32, 33 (App. 1995).  Thus, any questions regarding whether and to what extent HB 2281 is unconstitutional under state or federal law may be considered independently by an Arizona court if the final administrative decision is appealed.

### III.  Plaintiffs Have No First Amendment Right to Choose the Courses Taught in Arizona Public Schools Or to Dictate The Manner In Which Those Subjects Are Taught.

Plaintiffs' response attempts to characterize their First Amendment right as a claim by the students to "receive information and ideas" and by the teachers to "speak within the [MAS] curriculum."  (Resp. at 19.)  Nevertheless, plaintiffs ignore the fact that, on its face, HB 2281 does not regulate instructional or classroom speech by any individual teacher or student.  It merely prohibits a school district from implementing certain programs of instruction and therefore does not implicate any of the plaintiffs' individual First Amendment rights inside    or outside the classroom.  Apart from the

vague allegations that they were "confronted" for expressing opinions about HB 2281 (though not specifying who confronted them), plaintiffs have not otherwise asserted that their First Amendment rights have been infringed by any of the defendants sufficient to state a claim for relief.  Dismissal of their First Amendment claims is therefore proper pursuant to rule 12(b)(6).

The cases cited by the plaintiffs' response are inapposite and do not support their First Amendment claim.  Many of the cases plaintiffs rely upon involve an affirmative and specific restriction on student or teacher expression  as opposed to a law (like HB 2281), which prescribes the curriculum taught as a part of the official "program of instruction" in public schools as a matter of state policy.[6]  Plaintiff also relies on cases decided under the Establishment Clause[7] and state regulations purporting to regulate private schools,[8] neither of which are at issue here.

---

[6] *See Morse v. Frederick*, 551 U.S. 393 (2007) (student's First Amendment rights implicated where he was suspended for waving banner during school-sanctioned and supervised event); *Hazelwood Sch. Dist. v. Kuhlmeier*, 434 U.S. 260 (1988) (students' First Amendment rights implicated where student speech when the school principal removed two student articles from publication in a school-sponsored newspaper); *Bd. of Educ. Island Trees v. Pico*, 457 U.S. 853 (1982) (books removed from school library implicated students First Amendment rights).  The existence of a "right to know" was considered by the Supreme Court in *Pico*, but only three justices agreed that students possess a constitutionally protected entitlement to access particular books in the school's library. *Id.* at 863-69. Moreover, even these three justices explicitly noted that the decision regarding this right did not extend to the classroom.  *Id.* at 862, 869.

[7] *Epperson v. Arkansas*, 393 U.S. 97 (1968) involved a challenge to a state law prohibiting "teachers" from "teaching" the theory of evolution.  The Court struck down the law on the basis of the establishment clause and not purporting to give teachers an affirmative right to choose curriculum.

[8] In *Meyer v. Nebraska*, 262 U.S. 390 (1923), the Supreme Court struck down a state law prohibiting any "teacher" "in any private, denominational, parochial or public school, teach any subject to any person in any language other than the English

The Ninth Circuit recently reaffirmed the principal that teachers do not have a First Amendment right to compel government speech by bringing challenges to local policies or laws which regulate the curriculum in public schools.  In *Nampa Classical Academy v. Goesling*, No. 10-35542, 2011 WL 3562954, at *1 (Aug. 15, 2011), the Ninth Circuit rejected a teacher's challenge to a state policy prohibiting the use of sectarian or denominational texts in public schools.  In affirming the dismissal of the plaintiff teacher's claims, the Ninth Circuit reasoned that "[t]he First Amendment's speech clause does not . . . give Idaho charter school teachers, Idaho charter school students, or the parents of Idaho charter school students a right to have primary religious texts included as a part of the school curriculum." *Id.* at *1. The court explained that the policy prohibiting "sectarian texts" was a part of the curriculum and that "a public school's curriculum is a form of government speech." *Id.*  Thus, the Ninth Circuit concluded that "[b]ecause the government's own speech is not subject to the First Amendment, plaintiffs have no First Amendment right to compel that speech." *Id.*

Like the *Nampa* plaintiffs, plaintiffs here have no First Amendment right to dictate the Mexican American Studies curriculum in the public schools where they teach and attend school.  As in *Nampa*, dismissal of plaintiffs' First Amendment claims is therefore proper.

/ / /

---

language." Notably, the law at issue in *Meyers* broadly applied to both <u>public</u> and <u>private</u> institutions thereby obviously implicating First Amendment speech. Moreover, unlike § 15-111 and § 15-112 at issue here, the law in *Meyers* applied <u>directly</u> to restrict teachers' speech by its terms and imposed individual criminal liability on such teachers for violating the statute.

16

### IV. Plaintiffs Have Abandoned Their Freedom of Association Claim.

Notably, plaintiffs' response does not discuss or defend the viability of their "Freedom of Association" claim set forth under Count Three of the Third Amended Complaint. Plaintiffs' silence on this issue demonstrates a tacit acknowledgment that this claim is subject to dismissal as well.

### CONCLUSION

For these reasons, plaintiffs' Third Amended Complaint should be dismissed for lack of standing pursuant to rule 12(b)(1). Alternatively and at a minimum, plaintiffs' First Amendment claims under Counts Two and Three should be dismissed pursuant to rule 12(b)(6).

DATED this 7th day of November, 2011.

BURCH & CRACCHIOLO, P.A.

By: /s/Melissa G. Iyer
    Bryan Murphy, Esq.
    Melissa G. Iyer, Esq.
    Burch & Cracchiolo, P.A.
    702 East Osborn, Suite 200
    Phoenix, Arizona 85014
    Attorneys for Defendant
    John Huppenthal, Superintendent
    of Public Instruction and
    Executive Director of the
    Arizona State Board of Education

# CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Richard M. Martinez, Esq.         Richard@richardmartinezlaw.com
*Attorney for Plaintiffs*

Kevin D. Ray, Esq.         Kevin.Ray@azag.gov
Assistant Attorney General
Office of the Attorney General
State of Arizona
*Attorney for Defendants Arizona State Board of Education,
including members named in their Official Capacity*

Jinju Park Hurtado, Esq.         Jinju.Hurtado@azag.gov.
Assistant Attorney General
Office of the Attorney General
State of Arizona
1275 West Washington Street
Phoenix, AZ 85007
*Attorney for Defendants Arizona State Board of Education,
including members named in their Official Capacity*

                                        s/Emilia Serrata