**RICHARD M. MARTINEZ, SBA No. 7763**
307 South Convent Avenue
Tucson, Arizona 85701
(520) 327-4797 phone
(520) 320-9090 fax
richard@richardmartinezlaw.com
**Counsel for Plaintiffs and Plaintiffs-Intervenors**

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF ARIZONA

| | |
|---|---|
| Maya Arce, et. al.,<br><br>  Plaintiffs,<br><br>v.<br><br>John Huppenthal, Superintendent of Public Instruction, in his Official Capacity, et. al.,<br><br>  Defendants. | No. CV 10 - 623 TUC AWT |
| Margarita Elena Dominguez, and Nicholas A. Dominguez,<br><br>  Plaintiffs-Intervenors,<br><br>v.<br><br>John Huppenthal, Superintendent of Public Instruction, in his Official Capacity,<br><br>  Defendant. | **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, CT. DKT. NO. 159** |

Plaintiffs, by and through their counsel undersigned, hereby respond in opposition to Superintendent Huppenthal's pending Motion to Dismiss Complaint in Intervention by Intervenor Margarita Elena Dominguez.[1] In his motion, Superintendent Huppenthal does not specify the Rule of Civil Procedure pursuant to which he moves. But he argues that Margarita Elena Dominguez has no standing to bring the claims asserted in her Complaint in Intervention and incorporates by reference the reasons given in his Motion to Dismiss the Third

---

[1] Ct. Doc. No. 159.

Amended Complaint[2] and in the Court's Order granting in part and denying in part the Motion to Dismiss.[3] For those reasons, the plaintiffs assume that Superintendent Huppenthal moves to dismiss on the basis of lack of standing pursuant to Rule 12(b)(1) and moves to dismiss the First Amendment claim pursuant to Rule 12(b)(6).

Plaintiff-Intervenor Nicholas Dominguez raises the First Amendment claim in the Complaint in Intervention and Ms. Dominguez does **not** assert this claim. Because the instant motion is not directed against Mr. Dominguez, to the extent Superintendent Huppenthal moves to dismiss the First Amendment claim pursuant to Rule 12(b)(6), the motion should be denied. Plaintiffs' have established a First Amendment that has been recognized by this court.[4]

Further, Ms. Dominguez was identified as the next friend of her son, Nicholas Dominguez, in error. If the Court deems necessary, the intervenors will seek leave to amend the Complaint in Intervention to so reflect.

Accordingly, for the reasons more fully set forth in the accompanying memorandum of points and authorities, the plaintiffs respectfully urge denial of defendant's motion to dismiss.

Respectfully submitted this 22nd day of March, 2012.

                         s/*Richard M. Martinez*, Esq.
                         RICHARD M. MARTINEZ, ESQ.
                         Counsel for Plaintiffs

---

[2] Ct. Doc. No. 88.

[3] Ct. Doc. No. 159.

[4] Ct. Doc. No. 138.

**Memorandum of Points and Authorities**

In her Complaint in Intervention, Ms. Dominguez alleges that Superintendent Huppenthal has violated her right to Substantive Due Process and to Equal Protection of the laws. Superintendent Huppenthal does not argue Ms. Dominguez' lack of standing with regard to these two claims in either his Motion to Dismiss the Third Amended Complaint[5] or in the current Motion to Dismiss the Complaint in Intervention.[6] Ms. Dominguez has standing to bring both claims and Superintendent Huppenthal's Motion to Dismiss should be denied.

**I.    Standard of Review Pursuant to Rule 12(b)(1)**.

Plaintiffs have the burden of establishing standing.[7] "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[8] "Each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of the litigation."[9] At this pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."[10] "The threshold question of

---

[5] Ct. Doc. 88.

[6] Ct. Doc. 159.

[7] See e.g., *Kokkonen v. Guardian of Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[8] *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir.1996) (internal citations and quotation marks omitted).

[9] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(citations omitted).

[10] *Ibid.*

whether the plaintiffs have] standing (and the court has jurisdiction) is distinct from the merits of [their] claim.  Rather 'the jurisdictional question of standing precedes, and does not require, analysis of the merits."[11]

**II.    Plaintiff-Intervenor Margarita Elena Dominguez Satisfies the Requirements for Standing.**

A plaintiff establishes standing when:

1.   she has suffered an actual or imminent injury that is concrete and particularized;

2.   the injury is fairly traceable to the challenged action of the defendants; and

3.   the injury will likely be avoided or redressed by a decision in favor of the plaintiff.[12]

**A.    Plaintiff-Intervenor Margarita Elena Dominguez Has Standing to Claim a Violation of Her Right to Substantive Due Process.**

The constitution protects an individual's freedom relating to the most personal of all decisions, such as those involving marriage, procreation, contraception, family relationships, child rearing and education.[13]  These matters are "the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy," and "are central to the liberty protected by the Fourteenth Amendment."[14]  By eliminating an educational

---

[11] *Maya v. Centex Corp.,* 2011 U.S. App. LEXIS 19344, 13 (9th Cir. 2011).

[12] See e.g., *Stormans, Inc., v. Selecky*, 586 F. 3d. 1109, 1119 (9th Cir. 2009) (pharmacy and two pharmacists had Article III standing to challenge a state law requiring pharmacists to dispense all lawful medications, including the "Plan B," pill, although they had not been threatened with enforcement of the law). The Ninth Circuit noted in *Graham v. FEMA*, 149 F.3d 997, 1003 (9th Cir. 1998), that the applicable burden of proof in establishing standing is "likelihood," not certainty: "Plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision...plaintiffs must show only that a favorable decision is likely to redress [their injuries], not that a favorable decision will inevitably redress [their injuries]") (emphasis added).

[13]  *Planned Parenthood of Southeastern Pa. V. Casey*, 505 U.S. 833, 851 (1992).

[14]  *Ibid.*

-4-

program that Ms. Dominguez and her son had a right to choose, with no rational basis for doing so, Superintendent Huppenthal has facilitated an unwarranted intrusion of the State into the liberty interests that protect the decisions Ms. Dominguez and her son share regarding his education.

The nature of a parent's right to control the education and upbringing of her children stems from the Supreme Court's decisions in *Meyer v. Nebraska,*[15] and *Pierce v. Society of Sisters.*[16] The results of those cases were that the state could not prohibit parents from choosing a program of study for their child in a language other than English[17] and could not compel parents to send their child to public school.[18] Accordingly, the Ninth Circuit has stated that the *Meyer* and *Pierce* cases "evince the principle that the state cannot prevent parents from choosing a specific educational program."[19] Superintendent Huppenthal's actions to prevent Ms. Dominguez and Mr. Dominguez from choosing the MAS program is an injury to their liberty interests.

The injury sustained by Ms. Dominguez is frustration of the ability to choose an educational program brought about by the elimination of the MAS program that she and her son chose.[20] There is no speculation. The classes are gone at the insistence of Superintendent Huppenthal.

The causal nexus between Superintendent Huppenthal's action finding the MAS program in violation of HB 2281[21] and the elimination of the program is

---

[15] 262 U.S. 390 (1923).

[16] 268 U.S. 510 (1925).

[17] *Meyer,* 262 U.S. 390.

[18] *Pierce,* 268 U.S. 510.

[19] *Fields v. Palmdale Sch. Dist.,* 427 F.3d 1197 (9th Cir. 2005).

[20] See Declaration of Nicholas Dominguez, ¶6, Ct. Doc. No. 162-3.

[21] See the Kowal/Huppenthal Decision, Ct. Doc. Nos. 162-9 and -10.

unequivocally established, although the Court need only determine whether the causal relation is "probable enough to allow standing."[22] There is no doubt that the MAS classes have been eliminated because of Superintendent Huppenthal's action against the program, and but for his enforcement actions, the classes would have continued. The TUSD Governing Board issued its Resolution eliminating the MAS classes with specific reference to Superintendent Huppenthal's Decision.[23] Further, Superintendent Huppenthal has ordered TUSD to acquiesce to compliance monitoring of the classes and of student work and take other steps to prove that MAS classes are not being conducted.[24] Superintendent Huppenthal's Decision gave no guidance as to how TUSD might come into compliance with anything short of elimination of the classes.[25] The elimination of the MAS classes is most certainly "fairly traceable" to Superintendent Huppenthal's challenged action.[26]

Superintendent Huppenthal cannot argue that the elimination of the classes was caused by TUSD and not by his own actions. Though "it does not suffice if the injury complained of is 'the result of independent action of some third party not before the court,' that does not exclude injury produced by determinative or coercive effect upon the action of someone else."[27] For that reason, pharmacists who were likely to be terminated by their employer because their religious beliefs allegedly prevented them from delivering certain medications, as required by new state regulations, satisfied the causal connection requirement in their action to

---

[22] *Johnson v. Stuart,* 702 F.2d 193, 196 (9th Cir. 1983).

[23] Ct. Doc. Nos. 162-11 and -12.

[24] Ct. Doc. No. 162-13.

[25] The Court noted this in its Order denying the plaintiffs' Motion for Preliminary Injunction. Ct. Doc. No. 138, p.16, n.14.

[26] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (9th Cir. 1992).

[27] *Stormans, Inc., v. Selecky*, 586 F. 3d. 1109, 1112 (9th Cir. 2009).

strike down the regulations.[28] If the new rules had not been passed, the pharmacists' jobs with their present employers would not have been at stake.[29] The injury was actual and imminent and caused by the new regulations despite the possibility of their finding new employers who could accommodate their religious beliefs by having an additional pharmacist on duty to dispense the requested medication.[30] Likewise, in this case, were it not for HB 2281 and its application by Superintendent Huppenthal, the MAS classes would not have been eliminated.

The final requirement that the injury "is likely to be redressed by a favorable decision," requires "no more than a showing that there is a 'substantial likelihood' that the relief requested will redress the injury claimed."[31] Although a favorable decision by this Court will not guarantee that the TUSD Governing Board will reinstate the MAS classes, a finding that HB 2281 is unconstitutional is a necessary precondition to allow TUSD to bring back the program.[32] The Governing Board has maintained the MAS program since 1998 and there is a substantial likelihood that, absent Superintendent Huppenthal's finding of statutory violation, it would continue.[33]

---

[28] *Ibid.*, 586 F.3d at 1119.

[29] *Ibid.*, 586 F.3d at 1121-22.

[30] *Ibid.*

[31] *Stuart*, 702 F.2d at 196 (citations omitted).

[32] The intervenor plaintiffs need not prove redressability to a certainly, but that there is a likelihood that the harms will be redressed. See authorities cited at fn.11, *supra.*

[33] The intervenor plaintiffs acknowledge that two Governing Board members testified in the administrative hearing that they were not in favor of continuing MAS classes, but there was also testimony that other Board members did not believe the program violated HB 2281. Ct. Doc. No. 162-9, p.19, ¶¶111-113. However, those opinions came in the context of Superintendent Huppenthal's unconstitutional pursuit against the MAS program and in the midst of allegations that the MAS classes were

This case is similar to *Washington v. Seattle Sch. Dist.*, where a state constitutional amendment had the effect of prohibited busing of students as part of a voluntary integration plan.[34] Although the standing of the individual plaintiffs was not at issue in that case,[35] the Supreme Court's invalidation of the amendment did not require that any school districts move forward with busing plans, old or new. After the Supreme Court decision striking down the amendment, whether districts actually implemented busing plans would be up to the districts. But the favorable decision invalidating the amendment was a necessary precondition for any school district to engage in desegregative busing, just as it is in this case in order for the TUSD Governing Board to reinstate the MAS classes. The Court's action in this case is necessary to restore the decisionmaking authority to its rightful place in the political process, at the local level where the Governing Board may make its decision.

### A. Plaintiff-Intervenor Margarita Elena Dominguez Has Standing to Claim a Violation of Her Right to Equal Protection.

The Equal Protection clause requires that "a State may not allocate governmental power nonneutrally, by explicitly using the ***racial*** nature of a decision to determine the decisionmaking process."[36] When the State allocates power to place "unusual burdens on the ability of racial groups to enact legislation specifically designed to overcome the 'special condition' of prejudice," the State's action undermines the operation of those political processes that are ordinarily

---

against state law.  A favorable decision by the Court removing the taint of illegality from the MAS program and the compulsion to eliminate the program is likely to have a positive effect on TUSH's political climate and allow the Board's political process to function independently, in response to its constituents.

[34] 458 U.S. 457 (1982).

[35] In addition to the three school districts referenced in the Supreme Court decision, the plaintiffs included parents who sued on their own behalf. *See Seattle Sch. Dist. v. Washington,* 473 F.Supp. 996, 1000 (W.D. Wash. 1979).

[36] *Seattle,* 458 U.S. at 470.

relied upon to protect minorities.[37] In those cases where the State intentionally burdens the ability of minority groups to achieve legislation that inures to their benefit, it is the "special role" of the judiciary to safeguard the interests of those groups that are "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."[38] Ms. Dominguez presents just such a case here.

A three-judge panel analyzed the standing of parents to claim a violation of Equal Protection through restructuring of the political process to prohibit desegregative busing in *Lee v. Nyquist*.[39] Because the parents had children in schools with high degrees of racial concentrations and they alleged that the State had discriminated against them in their efforts to "promote equal educational opportunity by alleviating racial imbalance in the public schools," the court found that the parents,

> "***for themselves*** and their children, are the logical parties to attack the constitutionality of a law directly affecting the state's educational policy. They are also proper parties to assert the right to be free from racial discrimination in public education. Their interest is both personal and direct."[40]

Ms. Dominguez' interest is identical. HB 2281 directly harms her ability to select a program for her son that is designed to overcome the effects of discrimination in education. This injury is concrete and particularized to her.[41] Her interest did not evaporate less than a year ago when Nicholas turned eighteen. He was a minor when they both decided that he would take MAS classes in his

---

[37] *Ibid.*, 458 U.S. at 486, quoting *U.S. v. Carolene Products Co.,* 304 U.S. 144, 153, n.4 (1938).

[38] *Seattle,* 458 U.S. at 486, quoting *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 28 (1973).

[39] 318 F.Supp. 710 (W.D. N.Y. 1970).

[40] *Ibid.,* 318 F.Supp. at 713 (emphasis added).

[41] *See Lujan,* 504 U.S. 555 (1992).

junior and senior years and her interest remains the same today.

The restructuring of political power in order to frustrate the desires of members of a minority group to overcome some aspect of inequality contains two types of harms. First is the discrimination in blocking the benefit sought by the program at issue, in this case the benefit to the students from the MAS program. The second harm is to a broader group of racial minorities that now find it more difficult "[than for other members of the community] to achieve legislation in their interest."[42] By removing the decisionmaking authority from the TUSD Governing Board to develop a program designed to improve the academic achievement of Latino students, the State has discriminated against those who seek to improve the condition, not merely of the individual students, but of the Latino community in general.

HB 2281 harms Ms. Dominguez in this additional manner.  By removing the decision making to "a new and remote level of government," it targets *her* as a Latina who has advocated for the MAS program, not just for the benefit of her son and his classmates, but as a benefit to the larger Latino community. The injury is to her ability to engage in a fair and equitable political process to achieve that benefit. Thus, she suffers from two types of harms.

The causation and redressability analyses under the Equal Protection claim are identical to those argued pursuant to the Substantive Due Process claim and are incorporated herein by reference. Regarding whether there is a substantial likelihood that Ms. Dominguez' injury will be redressed by a favorable decision from this Court, while such a decision is a necessary precondition to redressing the injury caused by the elimination of the MAS classes, a favorable decision by the Court would restore the decision making authority at the Governing Board level and place the issue of MAS classes back in the proper sphere of the political process. Such a decision would certainly redress the harm to Ms. Dominguez'

---

[42] *Seattle,* 458 U.S. at 470, citing *Hunter v. Erickson,* 393 U.S. 385, 395 (1969).

ability to advocate for a program that inures to the benefit of her son.

## CONCLUSION

HB 2281 and Superintendent Huppenthal have violated Ms. Dominguez' rights to Substantive Due Process and Equal Protection, resulting in the loss of her son's educational opportunities, the loss of her ability to choose an educational program appropriate for her son and the interference with her ability to advocate for a program that provides a means for her son to overcome educational inequalities often suffered by Latino students. There is a substantial likelihood that a decision in her favor will redress these harms. For the reasons stated above, Ms. Dominguez requests that the Court deny Superintendent Huppenthal's Motion to Dismiss.

Respectfully submitted this 22nd day of March, 2012.

s/*Richard M. Martinez, Esq.*
Richard M. Martinez, Esq.
Counsel for Plaintiffs

### Certificate of Service

I hereby certify that on March 22, 2012, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of the instant statement of facts via the Notice of Electronic Filing to the CM/ECF registrants of record.

s/*Richard M. Martinez, Esq*
RICHARD M. MARTINEZ
Counsel for Plaintiffs